IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| JONATHAN LEE RICHARDSON, § § *Plaintiff,* § § v. § § UNIVERSITY OF TEXAS § SYSTEM, UNIVERSITY OF TEXAS AT § SAN ANTONIO, SEAN CALLAHAN, § INDIVIDUALLY AND IN HIS OFFICIAL § CAPACITY AS UTSA POLICE OFFICER; § CHIEF GERALD LEWIS, § INDIVIDUALLY AND IN HIS OFFICIAL § CAPACITY AS UTSA POLICE CHIEF, § CITY OF SAN ANTONIO, TEXAS, DOES § 1-25, INCLUSIVE; § § *Defendants.* § § | Civil Action No. 5:19-CV-271-XR |

**ORDER**

On this day the Court considered Defendants' Motions to Dismiss (docket nos. 2, 3) and Plaintiff's Motion for Citation by Publication (docket no. 19). After careful consideration, the Court GRANTS Defendants' motions to dismiss and GRANTS IN PART AND DENIES IN PART Plaintiff's motion.

**BACKGROUND**

This case arises from the February 14, 2017 response by police officers, including Sean Callahan, who was at the time an officer in the University of Texas at San Antonio ("UTSA") Police Department, to the apartment of Plaintiff Jonathan Lee Richardson.

On February 14, 2017, officers from the UTSA Police Department and the San Antonio Police Department ("SAPD") were dispatched to Highview Place Apartments after a shooting. Docket no. 1-6 at 5. A bystander told the responding officers that Unit 8101 was the "trap house." *Id.* After Callahan knocked on the door of Unit 8101, Plaintiff opened the door and went outside. *Id.* Plaintiff alleges his pants fell down as he was coming outside, so he reached down to pull them up again. *Id.* In response, Callahan allegedly yelled, "Get your fucking hands up, dude," and pushed Plaintiff against the exterior wall. *Id.* Plaintiff alleges that Callahan violently threw him onto a bed of rocks and shoved his knee into the middle of Plaintiff's back. *Id.* Plaintiff allegedly complied with Callahan's requests and told Callahan that he did not have any knowledge of the shooting or any guns or drugs. *Id.* at 6. Callahan allegedly placed Plaintiff in handcuffs and threw him down on the curb outside the apartment. *Id.* The responding UTSA and SAPD officers allegedly then conducted a warrantless search of Plaintiff's apartment and did not find any guns, drugs, or other evidence to connect him to the shooting. *Id.*

Plaintiff filed his original petition on February 14, 2019 in the 45th District Court in Bexar County, Texas, and Defendants removed to this court on March 18, 2019. Docket no. 1. In his complaint, Plaintiff brings a claim for the deprivation of his constitutional rights under 42 U.S.C. § 1983 and claims under Texas law for assault and battery; false imprisonment; intentional infliction of emotional distress; and negligent hiring, supervision, training, and retention. Docket no. 1-6 at 1–2. Plaintiff brings these claims against the University of Texas System ("UT System"); UTSA; Callahan, the arresting officer, individually and in his official capacity as UTSA police officer; Gerald Lewis, individually and in his official capacity as

2

UTSA Chief of Police; City of San Antonio; SAPD Chief William McManus; and Does 1-25, the SAPD officers who allegedly failed to intervene. Docket no. 1-6 at 1-2.

Plaintiff's claims are as follows:

- excessive force claim against Callahan under Section 1983 (Count One);

- assault and battery claims against Callahan under Section 1983 (Count Two);

- unlawful arrest and false imprisonment claims against Callahan (Count Three) and SAPD (Count Four);

- intentional infliction of emotional distress claim against Callahan (Count Five) and SAPD (Count Six);

- negligent hiring, supervision, training, and retention claims against UTSA (Count Seven), SAPD Chief McManus[1] (Count Eight), and UTSA Chief Lewis (Count Nine).

## I. UT System, UTSA, and Chief Gerald Lewis's Motion to Dismiss (docket no. 2)

Pursuant to Federal Rule of Civil Procedure 12(b)(6), UT System, UTSA, and Lewis move to dismiss Plaintiff's § 1983 claims against them on the basis that Plaintiff fails to assert any claims against UT System; UT System, UTSA, and Lewis in his official capacity are not "persons" subject to suit; these defendants were not personally involved in the alleged constitutional violation and cannot be held liable for their subordinates' conduct under a respondeat superior theory; and Plaintiff fails to overcome Lewis's presumptive entitlement to qualified immunity in his individual capacity. Docket no. 2. They also move to dismiss Plaintiff's state claims against UT System, UTSA, and Lewis in his official capacity because

---

[1] Plaintiff does not list McManus in the caption or as a party, but he names McManus in Count Eight. It appears McManus has not been served.

3

they do not fall under the Texas Tort Claims Act's limited waiver of liability and against Lewis, in his individual capacity, because they are barred by TEX. CIV. PRAC. & REM. CODE § 101.106(e). Docket no. 2 at 11–12.

## II.   The City of San Antonio's Motion to Dismiss (docket no. 3)

The City moves to dismiss Plaintiff's § 1983 claims on the basis that Plaintiff does not plead the necessary elements for the failure to intervene or for municipal liability. Docket no. 3 at 3-4. The City also moves to dismiss Plaintiff's state claims because they do not fall under the Texas Tort Claims Act's limited waiver of liability. Docket no. 3 at 7–8.

## DISCUSSION

### I.   Standard of Review

Federal Rule of Civil Procedure 12(b)(6) allows the dismissal of a complaint for the "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To survive a motion to dismiss, a plaintiff's complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the complaint does not need to contain detailed factual allegations, it must contain enough factual allegations to "raise a right to relief above a speculative level." *Twombly*, 550 U.S. 544, 555 (2007). The plaintiff has an obligation to present more than labels, conclusions, and formulaic recitations of the elements to avoid dismissal. *Id.* However, the court does not accept conclusory allegations or unwarranted deductions of fact as true. *Tuchman v. DSC Commc'ns. Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994).

## II.     Application

Plaintiff brings civil rights claims against Defendants under 42 U.S.C. § 1983. Docket no. 1-6 at 2. Section 1983 provides a cause of action when a "person" acting under color of state law deprives another of "any rights, privileges or immunities secured by the Constitution and laws." 42 U.S.C. § 1983.

### A. Section 1983 claims against UT System, UTSA (Count Seven), Lewis in his official capacity (Count Nine), and Callahan in his official capacity (Counts One, Two, Three, Five)

First, it is not clear that the claims against Lewis (Count Nine) and UTSA (Count Seven) are brought under § 1983, nor is the UT System named in any count. It is also not clear that the claims against Callahan (Count One, Two, Three, Five) are brought under § 1983 in his official capacity. Still, to the extent Plaintiff's complaint brings § 1983 claims against UT System, UTSA, Lewis in his official capacity, or Callahan in his official capacity, these claims are dismissed. A state university is not a "person" under § 1983 because it is an arm of the state. *Stotter v. Univ. of Tex. at San Antonio*, 508 F.3d 812, 821 (5th Cir. 2007). Therefore, UT System and UTSA are not "persons" amenable to suits under § 1983. Section 1983 claims against state officials acting in an official capacity for damages are to be treated as suits against the state entity. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). Thus, UT System, UTSA, Lewis in his official capacity, and Callahan in his official capacity are not "persons" amenable to Plaintiff's § 1983 claims. Defendants' motion to dismiss all § 1983 claims against UT System, UTSA, and Chief Gerald Lewis in his official capacity is GRANTED. Plaintiff's claims against Callahan (Counts One, Two, Three, Five) are dismissed to the extent that they were brought against Callahan in his official capacity under § 1983.

### B. Section 1983 individual capacity claim against Chief Lewis (Count Nine)

Plaintiff alleges that Lewis violated Plaintiff's Fourth Amendment rights (Count Nine) because of his failure to adequately hire, train, and supervise Callahan, his subordinate. In a § 1983 suit brought against a government official in his individual capacity, "it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." *Kentucky*, 473 U.S. at 166. "Under section 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability." *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987).

Defendants argue that qualified immunity bars Plaintiff's § 1983 claims against Lewis in his individual capacity. Docket no. 2 at 3. "In determining qualified immunity, courts engage in a two-step analysis." *Griggs v. Brewer*, 841 F.3d 308, 312 (5th Cir. 2016). A plaintiff seeking to overcome qualified immunity must show: "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (citing *Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2083 (2011)).

It is enough, in this case, to consider the first step. "To determine whether qualified immunity applies, a court must first determine whether the plaintiff has asserted a violation of a constitutional right." *Southard v. Tex. Bd. of Criminal Justice*, 114 F.3d 539, 551 (5th Cir. 1997) (citing *Siegert v. Gilley*, 500 U.S. 226, 231 (1991)). Because Plaintiff does not allege that Lewis was personally involved in the alleged constitutional violation—chiefly, the alleged use of excessive force—there must be "a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *See Thompkins*, 828 F.2d at 304. Plaintiff

alleges that Lewis's failure to adequately hire, train, and supervise Callahan caused the constitutional violation. Docket no. 1-6 at 18.

Failure to train allegations against supervisors are based on the standard for municipal liability. *Roberts v. City of Shreveport,* 397 F.3d 287, 293 (5th Cir. 2005). The failure to supervise or train as the basis for wrongful conduct under § 1983 requires a plaintiff to show that: "(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." *Smith v. Brenoettsy,* 158 F.3d 908, 911–12 (5th Cir. 1998). For the first requirement, the supervisor must overtly fail to train or supervise the subordinate who commits the constitutional violation. *Blank v. Eavenson*, 530 Fed. Appx. 364, 370 (5th Cir. 2013). The official must both be aware of the facts allowing an inference that a substantial risk of serious harm exists and actually make that inference in order to act with deliberate indifference. *Smith*, 158 F.3d at 912.

Generally, a court finds deliberate indifference when a plaintiff shows "a pattern of violations and that the inadequacy of the training is obvious and obviously likely to result in a constitutional violation." *Cousin v. Small,* 325 F.3d 627, 637 (5th Cir. 2003). The "deliberate indifference" standard requires that the supervisor disregard "a known or obvious consequence of [his] action," not that the supervisor make unintentional oversights. *Evett v. DETNTFF*, 330 F.3d 681, 689 (5th Cir. 2003) (quoting *Southard*, 114 F.3d at 551). Moreover, "for liability to attach based on an 'inadequate training' claim, a plaintiff must allege with specificity how a particular training program is defective." *Roberts,* 397 F.3d at 293 (citing *Benavides v. Cty. of Wilson*, 955 F.2d 968, 973 (5th Cir. 1992).

Plaintiff fails to state a claim for plausible relief under this theory of liability because Plaintiff asserted merely conclusory allegations that Lewis "knew or should have known" that the training for preventing the use of excessive force was inadequate. Docket no. 1-6 at 8. There are no factual allegations regarding Lewis's alleged knowledge about this beyond a conclusory allegation that he did know or should have known. *Id.* Moreover, Plaintiff fails to allege that Lewis had knowledge of facts giving rise to an inference that a substantial risk of serious harm existed or that he did in fact make that inference. There is no allegation in the complaint that there were any other similar incidents in the UTSA Police Department to give rise to such an inference overall, nor is there any allegation that Callahan had any history of conduct that could give rise to such an inference. Additionally, alleging that Lewis should have known is insufficient for deliberate indifference, which requires more than an unintentional oversight. Plaintiff merely concluded that this alleged failure caused the alleged violation of Plaintiff's constitutional rights and that it amounted to deliberate indifference. The allegation in the complaint concludes that the training to prevent the use of excessive force was inadequate, but it fails to state any specific facts that could lead to an inference as to why or how this training was defective.

In the absence of personal involvement and a sufficient causal connection, supervisory liability can exist if "supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of a constitutional violation." *Thompkins*, 828 F.2d at 304 (citing *Grandstaff v. City of Borger*, 767 F.2d 161, 169–70 (5th Cir.1985) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 98 (1978)). Plaintiff fails to allege Lewis implemented any policy so deficient that it constitutes a repudiation of

constitutional rights or that any such policy was the moving force of a constitutional violation. Because Plaintiff failed to state a plausible claim that, in failing to adequately hire, train, and supervise, Lewis violated any statutory or constitutional right of Plaintiff's, it is unnecessary to reach the second prong of the qualified immunity analysis. Defendants' motion to dismiss the § 1983 claim for the failure to adequately hire, train, and supervise against Lewis in his individual capacity (Count Nine) is GRANTED.

### C. Section 1983 claims against the City of San Antonio (Counts Four, Six) and McManus (Count Eight)

Plaintiff alleges that his constitutional rights were violated as a result of an unidentified SAPD officer or officers failing to intervene (Counts Four, Six). The City moves to dismiss Plaintiff's § 1983 claims—to the extent there are any, which the complaint does not clarify—because the complaint does not plausibly allege that any SAPD officer's failure to intervene violated Plaintiff's constitutional rights. Docket no. 3 at 2. Plaintiff also brings a claim against McManus (Count Eight), but it is not clear to what extent it is brought under § 1983 or against McManus in his official capacity. To the extent Plaintiff's complaint brings § 1983 claims against the City and McManus in his official capacity, these claims are dismissed.

An official capacity suit against a government official is treated as a suit against the entity of which the official is an agent. *Kentucky*, 473 U.S. at 165. To the extent that Plaintiff's claim is brought against McManus in his official capacity it is treated as a claim against the City. "A municipality or other local government may be liable under this section if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (citing *Monell*, 463 U.S. at

692). A plaintiff also must show that an "action pursuant to official municipal policy" caused the injury. *Id.* "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick*, 563 U.S. at 61. Proof of municipal liability requires: "(1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose moving force is that policy (or custom)." *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002). Municipalities are not vicariously liable for the constitutional torts of an employee unless the employee acts pursuant to official municipal policy. *Monell*, 463 U.S. at 663 n. 7. Thus, for the City to be subject to municipal liability under § 1983, the unidentified SAPD officer must have committed a constitutional violation and must have done so with a City policy as the moving force.

Here, it is necessary only to consider whether an SAPD officer committed a constitutional violation on the facts as pled. An officer's failure to intervene can be a constitutional violation under § 1983 if the officer: "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Whitley v. Hanna*, 726 F.3d 631, 646–47 (5th Cir. 2013). The officer also must be present at the scene of the constitutional violation, and a court should consider whether the officer acquiesced in any conduct violating the individual's constitutional rights. *Id.* at 647 (citing *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995)).

Plaintiff claims that SAPD "officers stood by idly and did nothing to intervene on behalf" of Plaintiff. Docket no. 1-6 at 7. This language leads to an inference that SAPD officers were present, but Plaintiff fails to allege that the unidentified SAPD officer knew that a fellow officer

was violating an individual's constitutional rights, that there was a reasonable opportunity to prevent the harm, or that the officer chose not to act. Moreover, the complaint does not allege any factual matter that could constitute acquiescence in the conduct allegedly violating Plaintiff's constitutional rights. Plaintiff fails to state a claim that a constitutional violation occurred as a result of any SAPD officer failing to intervene. It is unnecessary to reach the *Monell* requirements because Plaintiff failed to state a plausible claim that an SAPD officer failed to intervene in violation of Plaintiff's Fourth Amendment rights.

Plaintiff also alleges that SAPD officers performed an unwarranted search of his apartment in violation of his Fourth Amendment rights. Docket no. 1-6 at 6. Plaintiff fails to allege that any municipality policy or custom caused the alleged constitutional violation as is required to hold a municipality liable for the actions of subordinates under *Monell*. Therefore, Plaintiff also fails to state a claim under § 1983 for the unlawful search of his apartment by failing to allege that any City policy or custom existed or caused the violation. The failure to adequately hire, train, and supervise claims against SAPD and McManus in his official capacity are dismissed to the extent they are brought under § 1983 because Plaintiff failed to adequately plead any constitutional violation by an SAPD officer. Defendant's motion to dismiss Plaintiff's § 1983 claims is GRANTED to the extent that Counts Four and Six are brought under § 1983 and Count Eight is brought under § 1983 against McManus in his official capacity.

### D. State Claims

Plaintiff also asserts state-law claims of assault and battery; false imprisonment; intentional infliction of emotional distress; and negligent hiring, supervision, training, and

11

retention against Defendants. As stated above, all federal claims against UT System, UTSA, Chief Lewis, and the City of San Antonio—to the extent Plaintiff brings any—are dismissed.

A district court "may decline to exercise supplemental jurisdiction over a claim" if the court has "dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c). The court's "decision whether to exercise that jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009). In determining whether to exercise or relinquish jurisdiction, the Court looks not only to the statutory factor in § 1367(c)(3), but also "to the common law factors of judicial economy, convenience, fairness, and comity." *Enochs v. Lampasas Cty.*, 641 F.3d 155, 159 (5th Cir. 2011). "The general rule is that a court should decline to exercise jurisdiction over remaining state-law claims when all federal-law claims are eliminated before trial." *Brookshire Bros. Holding, Inc. v. Dayco Prods., Inc.*, 554 F.3d 595, 602 (5th Cir. 2009).

If the Court chooses to decline to exercise supplemental jurisdiction over pendent state law claims, such dismissal must be without prejudice. *Bass v. Parkwood Hosp.*, 180 F.3d 234, 246 (5th Cir. 1999). Here, no special circumstances incline the Court to retain jurisdiction over Plaintiff's state law claims. Accordingly, these state law claims are dismissed without prejudice under § 1367(c). Both the federal and state claims against Defendants Callahan in his individual capacity, McManus in his individual capacity, and Does 1-25 remain.

### E.  Citation by Publication

Finally, Plaintiff moves for citation by publication of Officer Sean Callahan. Docket no. 19. Plaintiff states that Callahan's last place of employment, UTSA, believed he was now working in Smiley, Texas. *Id.* Plaintiff states that a process server's skip trace to locate Callahan

12

in Smiley was unsuccessful, as was service at two possible addresses. *Id.* An attached affidavit by a process server states that there are over 35 people in Texas by the name Sean Callahan. *Id.* Plaintiff's counsel stated it has "liquidated all resources to locate and serve" Callahan. *Id.*

The federal rules permit service by any means proper under the relevant state law, FED. R. CIV. P. 4(e), and Texas law permits citation by publication under certain circumstances, TEX. R. CIV. P. 109. This method is available in Texas when "a party to a suit, his agent or attorney" provides an affidavit stating that "the resident of any party defendant is unknown to affiant . . . or that such defendant is a transient person . . . or that such defendant is absent from or is a nonresident of the State[.]" *Id.* It is the duty of the Court, before judgment can be granted on this mode of service, to "inquire into the sufficiency of the diligence exercised in attempting to ascertain the residence or whereabouts of the defendant[.]" *Id.* Here, however, Plaintiff has not provided the affidavit required by the Texas rules. Further, the Court is not convinced, on the facts as stated, that Plaintiff has exhausted all reasonable means. "A diligent search must include inquiries that someone who really wants to find the defendant would make, and diligence is measured not by the quantity of the search but by its quality." *In re E.R.*, 385 S.W.3d 552, 565 (Tex. 2012).

Accordingly, this motion is GRANTED IN PART AND DENIED IN PART. The Court grants Plaintiff an extension of 90 days for service of Callahan. This case is set for a status conference on August 1, 2019, at which date Plaintiff should be prepared to discuss all efforts to serve Callahan. The Court denies Plaintiff's request for citation by publication, subject to re-urging after this status conference. It appears Defendants McManus and Does 1-25 have not been served, and Plaintiff has moved for additional time only to serve Callahan. Without such

motion, when the deadline to serve these defendants passes the Court will order Plaintiff to show cause why these defendants should not be dismissed for lack of timely service.

## CONCLUSION

Defendants' Motions to Dismiss (docket nos. 2, 3) are GRANTED. Plaintiff's request for leave to amend is DENIED as to Defendants University of Texas System and University of Texas at San Antonio. The Clerk is DIRECTED to terminate these defendants.

Plaintiff's claims against Chief Gerald Lewis, individually, and the City of San Antonio are DISMISSED WITH LEAVE TO AMEND. Should Plaintiff wish to pursue his claims against these defendants, he must file an amended complaint by June 21, 2019.

Plaintiff's claims against Does 1-25, SAPD Chief McManus (individually), and Officer Callahan (individually) remain. Plaintiff's Motion for Citation by Publication (docket no. 19) is GRANTED IN PART AND DENIED IN PART. The deadline for service of Callahan is extended by 90 days from its previous expiration, but the request for citation by publication is denied at this time.

It is so ORDERED.

SIGNED this 31st day of May, 2019.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE