# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JONATHAN LEE RICHARDSON, | § | |
| | § | |
| *Plaintiff* | § | Civil Action No. 5:19-CV-00271-XR |
| | § | |
| v. | § | |
| | § | |
| UNIVERSITY OF TEXAS SYSTEMS, et al., | § | |
| | § | |
| *Defendants.* | § | |

## ORDER ON SUMMARY JUDGMENT

On this date, the Court considered Defendant Sean Callahan's ("Callahan") Motion for Summary Judgment (docket no. 48), Plaintiff Jonathan Lee Richardson's ("Plaintiff") Response (docket no. 50), and Callahan's Reply (docket no. 52). After careful consideration, the Court **GRANTS** summary judgment in favor of Callahan for the reasons stated below.

## BACKGROUND

On February 14, 2017, the San Antonio Police Department ("SAPD") in conjunction with the University of Texas at San Antonio ("UTSA") dispatched several police officers, including Defendant Callahan, to the Highview Place Apartments to respond to a shooting. (docket no. 25 at 5). Callahan was wearing a body camera, which was on and recording, and the footage has been submitted as evidence by both parties. (docket nos. 48-2, 50-1). The officers began an investigation of the shooting, and shortly thereafter received a bystander tip that an apartment within the nearby complex was a "trap house." Callahan knocked on the suspected apartment unit door, and when it opened, he smelled burnt marijuana. Plaintiff was the one who opened the door, walked outside, and closed the door behind him. As soon as Plaintiff opened the door, Callahan ordered him to put his hands up. Plaintiff initially complied, but soon thereafter dropped his hands

1

down to his waist—according to Plaintiff, he did so in order to pull his pants up. (docket no. 50-1). As Plaintiff dropped his hands, Callahan grabbed Plaintiff by the front of his shirt, pushing him toward the exterior apartment wall and again instructing him to put his hands up.

While Callahan was instructing Plaintiff, another occupant of the apartment partially opened the door. When Callahan saw the door opening, he ordered the other individual to keep the door open and to come outside. The other individual disobeyed Callahan's order and shut the apartment door on him. Plaintiff then reached for the doorknob, and Callahan pulled him away from the door by his shirt, took him to the ground, and handcuffed him. Plaintiff alleges that Callahan violently threw him onto a bed of rocks and shoved his knee into Plaintiff's back, handcuffed him, and threw him onto the curb.[1] The takedown is not clearly shown on the body cam footage, but the footage does show Callahan taking Plaintiff to the ground and putting his knee on Plaintiff's back while he called for backup. Callahan instructed Plaintiff to put his hands behind his back and handcuffed him.

Once Callahan had handcuffed Plaintiff, Callahan stood up and walked back toward the apartment door, where he met two other officers who had come to assist him. Callahan again knocked on the apartment door, announcing himself as police and ordering the occupants to open the door. Plaintiff can be heard off-camera yelling at Callahan and the other officers. When no one opened the apartment door, Callahan walked back over to Plaintiff and stood him up, walked him further away from the apartment door, and sat him down on the sidewalk, still handcuffed. Callahan then walked to check on another officer nearby who was questioning several other occupants of the apartment complex about the shooting. Within two minutes of walking away

---

[1] A court faced with contested factual allegations may consider video evidence when ruling on a qualified immunity defense at summary judgment if one side's version of the facts is "discredited by the record that no reasonable jury could have believed him." *Scott v. Harris*, 550 U.S. 372, 380 (2007). The Court here relies upon the facts taken in the light most favorable to Plaintiff, including the objective and uncontroverted video evidence.

from Plaintiff, Callahan and the other officer determined none of the other occupants knew anything about the shooting, and told them all they were free to go. At that point, Callahan walked back over to Plaintiff, who was still seated and handcuffed on the sidewalk. Callahan asked Plaintiff what his name was, and Plaintiff began yelling and cursing at Callahan, making aggressive movements and gestures. Callahan and other officers attempted to speak to Plaintiff and calm him down. One officer stood Plaintiff up and walked him away from the other officers, speaking with him until he was calm. After two to three minutes, the other officer (assisted by two additional officers nearby) uncuffed Plaintiff. Callahan observed from afar and does not appear to have had any other interactions with Plaintiff.

On February 14, 2019, Plaintiff filed suit in the 45th District Court in Bexar County, Texas, against multiple defendants, including Callahan in his individual and official capacity as a UTSA police officer, bringing multiple state and federal claims pursuant to 42 U.S.C. § 1983. (docket no. 1-6 at 1–2). The case was removed to this Court on March 18, 2019. (docket no. 1). On March 31, 2019, this Court dismissed all Section 1983 claims against Callahan in his official capacity. (docket no. 21 at 5). Plaintiff subsequently filed his first amended complaint on June 21, 2019 and again brought multiple state and federal law claims against Callahan in his individual and official capacity. (docket no. 25). On October 18, 2019, this Court granted Callahan's partial motion to dismiss Plaintiff's state law claim of intentional infliction of emotional distress and all Section 1983 claims against Callahan in his official capacity. (docket no. 45).

Accordingly, there remain three Section 1983 claims against Callahan in his individual capacity for excessive force (Count I), "assault and battery" (Count II),[2] and unlawful arrest/false

---

[2] Counts I and II both allege constitutional violations brought under 42 U.S.C. § 1983. (docket no. 25 ¶¶ 39–61). These counts are duplicative and based on the same essential factual allegations—that Callahan used force that was "unnecessary, excessive and unreasonable under the circumstances." *Id.* at ¶ 50. The Court thus analyzes them together as a claim for excessive use of force.

imprisonment (Count III). Callahan now moves for summary judgment on all remaining claims, arguing he is entitled to qualified immunity and seeking dismissal of Plaintiff's complaint with prejudice. (docket no. 48).

## DISCUSSION

### I. Legal Framework

#### A. Summary Judgment Standard

The Court will grant summary judgment if the record shows there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 355 (5th Cir. 2010). "A fact is material only if its resolution would affect the outcome of the action." *Wiley v. State Farm Fire & Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009). The moving party bears the initial burden of informing the court of the basis for the motion and of identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Adams v. Travelers Indem. Co.*, 465 F.3d 156, 163 (5th Cir. 2006).

Once the moving party meets this burden, the nonmoving party must "go beyond the pleadings" and designate competent summary judgment evidence "showing that there is a genuine issue for trial." *Adams*, 465 F.3d at 164; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986). "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence. *Topalian*

*v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). Mere conclusory allegations, unsubstantiated assertions, improbable inferences, unsupported speculation, and hearsay evidence (unless within a recognized exception) are not competent summary judgment evidence. *Walker v. SBC Servs., Inc.*, 375 F. Supp. 2d 524, 535 (N.D. Tex. 2005) (citing *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994); *Fowler v. Smith*, 68 F.3d 124, 126 (5th Cir. 1995)).

When ruling on a motion for summary judgment, the Court must view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party. *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005). A court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254–55. However, when the nonmoving party has failed "to address or respond to a fact raised by the moving party and supported by evidence, then the court may consider the fact as undisputed" and "[s]uch undisputed facts may form the basis for a summary judgment." *Broadcast Music, Inc. v. Bentley*, Civil Action No. SA-16-CV-394-XR, 2017 WL 782932, at *2 (W.D. Tex. Feb. 28, 2017). "The court also considers 'evidence supporting the moving party that is uncontradicted and unimpeached.'" *Gordon v. Acosta Sales & Mktg., Inc.*, No. SA-13-CV-662-XR, 2014 WL 7339117, at *3 (W.D. Tex. Dec. 22, 2014), *aff'd*, 622 F. App'x 426 (5th Cir. 2015) (quoting *Reeves*, 530 U.S. at 151).

B. <u>Plaintiff's Constitutional Claims</u>

Plaintiff's three remaining claims are brought under 42 U.S.C. § 1983, which prohibits a person, "under color of any statute, ordinance, regulation, custom, or usage of any State" from subjecting, or causing to be subjected, any citizen or any person within the jurisdiction of the

5

United States "to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. A plaintiff must establish two elements under a Section 1983 claim: (1) a constitutional violation, and (2) that the defendants were acting under color of state law when they committed the constitutional violation. *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013).

Section 1983 "is not itself a source of substantive rights," but simply provides a "method for vindicating federal rights elsewhere conferred." *Flores v. City of Palacios*, 381 F.3d 391, 404 (5th Cir. 2004). Here, Plaintiff claims that Callahan violated his rights conferred by the Fourth Amendment, "which guarantees citizens the right 'to be secure in their persons…against unreasonable…seizures.'" *Graham v. Connor*, 490 U.S. 386, 394 (1989) (citing U.S. CONST. amend. IV). "Only <u>unreasonable</u>…seizures violate the Fourth Amendment," so the "touchstone" of any Fourth Amendment analysis is "reasonableness." *Osborne v. Harris Cty., Tex.*, 97 F. Supp. 3d 911, 931 (S.D. Tex. 2015) (emphasis added) (citing *Ohio v. Robinette*, 519 U.S. 33, 39 (1996)). Plaintiff claims Callahan acted unreasonably in two fundamental ways: (1) by using excessive force, and (2) by seizing him without sufficient legal justification.

    C. Qualified Immunity

Callahan has raised the defense of qualified immunity to Plaintiff's remaining claims. (docket no. 48 at 1). "Qualified immunity protects public officials from suit unless their conduct violates a clearly established constitutional right." *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008). A "clearly established" right exists "when its contours are sufficiently clear that a reasonable official would have realized that his conduct violated that right, not simply that the conduct was otherwise improper." *Foster v. City of Lake Jackson*, 28 F.3d 425, 429 (5th Cir. 1994). "The relevant, dispositive inquiry in determining whether a right is clearly established is

6

whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Lytle v. Bexar Cty., Tex.*, 560 F.3d 404, 410 (5th Cir. 2009) (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)). "The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Brown v. Lynch*, 524 F. App'x 69, 74 (5th Cir. 2013) (citing *Brumfield*, 551 F.3d at 326). Furthermore, "[o]bjective reasonableness is a matter of law for the court to decide." *Brown*, 524 F. App'x at 74. A police officer's conduct is objectively reasonable unless all reasonable officials in the officer's circumstances would have known the conduct violated the plaintiff's constitutional rights. *Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 419 (5th Cir. 2008). In other words, "[i]f reasonable public officials could differ as to whether the defendants' actions were lawful, the defendants are entitled to immunity." *Zarnow v. City of Wichita Falls, Tex.*, 500 F.3d 401, 408 (5th Cir. 2007) (citing *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

A government official may assert qualified immunity by "plead[ing] his good faith and establish[ing] that he was acting within the scope of his discretionary authority." *Salas v. Carpenter*, 980 F.2d 299, 306 (5th Cir. 1992). In the Fifth Circuit, once qualified immunity is properly raised, the plaintiff bears the burden of negating the defense, even on summary judgment. *Brumfield*, 551 F.3d at 326. Thus, "[a] qualified immunity defense alters the typical summary judgment burden of proof in that once the defense is pleaded by an official, the burden shifts to the plaintiff to rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established federal law." *Hunt v. Pierson*, 730 F. App'x 210, 215–16 (5th Cir. 2018). Even though it is the plaintiff's burden to negate qualified immunity, courts must still view all facts and draw all inferences in his favor. *Hanks v. Rogers*, 853 F.3d 738, 743 (5th Cir. 2017); *see also Hunt*, 730 F. App'x at 215–16. However, "a plaintiff's

version of the facts should not be accepted for purposes of qualified immunity when it is 'blatantly contradicted' and 'utterly discredited' by video recordings." *Hanks*, 853 F.3d at 744 (quoting *Scott v. Harris*, 550 U.S. 372, 380–81 (2007)).

Courts evaluate claims of qualified immunity in a two-step analysis, and have discretion to decide which prong of the inquiry to address first: (1) whether Plaintiff has adduced sufficient evidence to raise a genuine issue of material fact suggesting Callahan's conduct violated an actual constitutional right; and (2) whether Callahan's "actions were objectively unreasonable in light of clearly established law at the time of the conduct in question." *Brumfield*, 551 F.3d at 326; *Pearson v. Callahan*, 555 U.S. 223, 242 (2009).

**II.     Analysis**

Callahan has properly raised the defense of qualified immunity to Plaintiff's remaining claims against him by pleading his good faith and that he was acting within the scope of his discretionary authority.³  *Salas*, 980 F.2d at 306 (defining how officials may properly raise defense); *Mowbray v. Cameron Cty., Tex.*, 274 F.3d 269, 280 (5th Cir. 2001) ("Under Texas law, an officer's investigation of a crime . . . [is] considered [as a] discretionary duty within police authority."); *Tipps v. McCraw*, 945 F. Supp. 2d 761, 767 (W.D. Tex. 2013) (holding two law enforcement officers acted within the scope of their duties when investigating a crime, even if their actions were conducted improperly). Plaintiff does not argue in his response that Callahan failed to properly raise qualified immunity.⁴

---

³ Plaintiff claims, without citing any legal authority, that Callahan acted *ultra vires*. The *ultra vires* exception to governmental immunity is inapplicable here, where Callahan has asserted qualified immunity against claims brought against him in his personal capacity. *See Tipps*, 945 F. Supp. 2d at 767 (discussing the *ultra vires* exception).

⁴ Plaintiff's response preliminarily contends that Callahan's "motion based on '**Qualify Immunity**' in Officer Sean Callahan [sic] official capacity is **moot** because the Court had previously rule [sic] on Qualify Immunity [sic] in officer Sean Callahan's official capacity." (docket no. 50 at 1) (emphasis in original). Plaintiff is mistaken, as this Court did not address Callahan's entitlement to qualified immunity in the May 31, 2019 order to which he cites. (docket no. 21). Plaintiff also states in his response that the Court's May 31, 2019 order "allowed Plaintiff to proceed against

Because Callahan has properly raised the defense, the Court will consider whether Plaintiff has carried his burden to rebut the defense for each of the claims against Callahan. *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010) ("Although qualified immunity is nominally an affirmative defense, the plaintiff bears a heightened burden to negate the defense once properly raised.") As stated earlier, a "narrow exception" exists to the court's general "acceptance of a plaintiff's evidence on summary judgment if video evidence undeniably contradicts the plaintiff's version of the facts such that no reasonable jury could believe it." *Chacon v. Copeland*, 577 F. App'x 355, 359 (5th Cir. 2014). In this case, the Court finds many of Plaintiff's allegations are contradicted or discredited by Callahan's bodycam footage, which Plaintiff himself submitted as evidence. As a result, this Court assigns greater weight to the facts evident in the video recording taken at the scene. *Buchanan v. Gulfport Police Dept.*, 530 F. App'x 307, 311 (5th Cir. 2013).

A. <u>Excessive Force</u>

An alleged "Fourth Amendment excessive-force violation" requires the plaintiff to show: (1) an injury (2) that directly resulted from the use of force that was clearly excessive to the need, and (3) excessiveness that was "objectively unreasonable." *Buchanan*, 530 F. App'x at 312. Thus, reasonableness is the dispositive inquiry for both prongs of the qualified immunity analysis—whether Plaintiff has established a violation of a constitutional right, and whether that right was clearly established at the time of the violation—and the Court need only evaluate it once. *Lytle*, 560 F.3d at 410.

---

Officer Callahan in his individual capacity," but that "Defendant's Motion for Summary Judgment is not based on Plaintiff's lawsuit against the Defendant in his individual capacity" and "[a]s such, Defendant's motion for summary judgement is devoid of facts and law as to suit against Callahan individually." (docket no. 50 at 3). However, contrary to Plaintiff's position, Callahan's motion is premised entirely on the notion of qualified immunity, which is only available in suits against defendants in their individual capacity. *See Sanders–Burns v. City of Plano*, 594 F.3d 366, 371 (5th Cir. 2010) (stating that qualified immunity is "a defense that is only relevant to individual capacity claims"). As stated above, the Court finds that Callahan has properly raised qualified immunity on summary judgment and will proceed to analyze Plaintiff's remaining claims accordingly.

This Court must examine whether Callahan's use of force against Plaintiff was "objectively reasonable in light of the facts and circumstances confronting [him]." *Scott v. United States*, 436 U.S. 128, 137–139 (1978). Determining whether the use of force is objectively reasonable "requires careful attention to the facts and circumstances of each particular case." *Graham,* 490 U.S. at 396. Particular facts and circumstances should include: (1) the severity of the crime at issue; (2) whether the suspect posed an immediate threat to the safety of officers or others; and (3) whether the suspect was actively resisting arrest or attempting to evade arrest. *Id*. Additionally, "[t]he reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene" who is without the 20/20 vision of hindsight. *Id.*

To defeat Callahan's assertion of qualified immunity, it is Plaintiff's burden to raise genuine disputes of material fact surrounding the "excessiveness and reasonableness" of the force applied by Callahan. *Baeza v. Becker*, No. SA-14-CV-659-XR, 2015 WL 6127190, at *8 (W.D. Tex. Oct. 15, 2015). Plaintiff contends there are genuine disputes of material fact as to whether Callahan's actions constituted excessive force when he:

> ordered [Plaintiff] out into public space, and thereafter use [sic] excessive force… violently threw [Plaintiff] down on a bed of rocks, causing immediate pain and discomfort, [and] proceeded to elevate the induced pain by shoving his knee into [Plaintiff's] back even after he noticed that [Plaintiff] was only pulling his pants and did not pose an imminent threat of danger and/or harm to the officers.

(docket no. 50 at 12). However, the video evidence shows Callahan did not order Plaintiff out of his apartment; instead, Plaintiff willingly walked outside and towards Callahan after Callahan knocked on the door. Further, Callahan did not immediately "violently" throw Plaintiff to the ground, as Plaintiff alleges; instead Callahan ordered Plaintiff to raise his hands as Callahan began to describe the situation. Callahan only grabbed Plaintiff's shirt and pushed him toward the wall after Plaintiff disobeyed Callahan's order to keep his hands raised. And Callahan only took

10

Plaintiff to the ground and handcuffed him after (1) another person inside the apartment shut the door on Callahan, disobeying his order to come outside, and (2) Plaintiff again disobeyed Callahan's order to keep his hands up by reaching for doorknob. Callahan had his knee on Plaintiff's back while he called for backup and until he handcuffed him. Approximately 40 seconds elapsed between Callahan pulling Plaintiff away from the door to take him to the ground and Callahan standing up after successfully handcuffing Plaintiff.

The Court finds Callahan's application of force was objectively reasonable given the totality of the circumstances. Notwithstanding the fact that Plaintiff was only trying to pick up his pants, Plaintiff's failure to obey orders—twice—to keep his hands raised could reasonably be seen as an immediate threat to Callahan's safety. *Cadena v. Ray*, No. 5:15-CV-552-DAE, 2016 WL 6330438, at *5 (W.D. Tex. Oct. 27, 2016), *aff'd*, 728 F. App'x 293 (5th Cir. 2018) ("[Plaintiff's] movements towards the officers made it objectively reasonable for [the officer] to believe that [plaintiff] posed a threat…"). A reasonable officer in Callahan's position could find that Plaintiff's actions and the totality of the circumstances justified the force Callahan used. Because Plaintiff has failed to show Callahan's use of force was objectively excessive or clearly unreasonable, Callahan is entitled to qualified immunity on Plaintiff's excessive force claim. *See Zarnow*, 500 F.3d at 408 ("[i]f reasonable public officials could differ as to whether the defendants' actions were lawful, the defendants are entitled to immunity.")

    B. <u>Unlawful Arrest/False Imprisonment</u>

Next, the Court examines whether Callahan is entitled to qualified immunity on Plaintiff's Unlawful Arrest/False Imprisonment claim (Count III). Callahan moves for summary judgement, claiming he is entitled to qualified immunity and that Plaintiff's "wrongful detention" was permissible under *Terry*. *See Terry v. Ohio*, 392 U.S. 1 (1968). Plaintiff responds that his alleged

"arrest" was an unlawful seizure without probable cause, was not a brief investigatory stop under *Terry*, and that multiple genuine disputes of material facts make summary judgment inappropriate on his false imprisonment claim. (docket no. 50 at 10–12). Because Callahan properly invoked the defense of qualified immunity, the burden is on Plaintiff to prove Callahan is not entitled to the doctrine's protection. *Michalik v. Hermann*, 422 F.3d 252, 258 (5th Cir. 2005).

Although the parties dispute whether Callahan arrested Plaintiff or merely detained him, "both investigative stops and arrests are 'seizures' under Fourth Amendment law." *Rakun v. Kendall Cty., Tex*, No. CIV.A. SA-06-CV-1044, 2007 WL 2815571, at *6 (W.D. Tex. Sept. 24, 2007). The "general rule" is that "Fourth Amendment seizures are 'reasonable' only if based on probable cause." *Dunaway v. New York*, 442 U.S. 200, 213 (1979). However, the Supreme Court in *Terry* recognized an exception to the probable cause requirement "for certain seizures of the person that do not rise to the level of full arrests." *U.S. v. Sharpe*, 470 U.S. 675, 689 (1985) (Marshall, J., concurring); *Florida v. Royer*, 460 U.S. 491, 498 (1983). Thus, an officer may, consistent with the Fourth Amendment, conduct a brief investigatory stop based on reasonable suspicion. *Terry*, 392 U.S. at 30.

Reasonable suspicion is "'a particularized and objective basis' for suspecting the person stopped of criminal activity." *Ornelas v. United States*, 517 U.S. 690, 696 (1996) (quoting *U.S. v. Cortez*, 449 U.S. 411, 417–18 (1981)). "While 'reasonable suspicion' is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, the Fourth Amendment requires at least a minimal level of objective justification for making the stop." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000) (citing *U.S. v. Sokolow*, 490 U.S. 1, 7 (1989)). "There is no bright line point of distinction between an investigatory stop and an arrest." *Brown*, 524 F. App'x at 75. A court assessing the legality of a stop must: (1) evaluate whether the stop

was lawful at the outset, and (2) determine whether the officer conducted the stop in a manner "reasonably related in scope to the circumstances which justified the interference in the first place." *Terry*, 392 U.S. at 19–20.

First, Callahan's initial seizure of Plaintiff was lawful and justified by reasonable suspicion of criminal activity. Callahan, while canvassing an area for information following a shooting, acted on a bystander tip pointing him towards a "trap house."[5] (docket no. 50-1). Callahan knocked on the door of the house, Plaintiff answered, and Callahan smelled burnt marijuana. Callahan did not seize Plaintiff until Plaintiff proceeded to disobey the order to keep his hands up and reached for his waist to pull up his pants. At that point, Callahan pushed Plaintiff against the exterior apartment wall and again ordered him to keep his hands up. Although Plaintiff's presence in an area of suspected criminal activity "standing alone…is not enough to support a reasonable, particularized suspicion that the person is committing a crime," Callahan's suspicion of marijuana in the apartment and Plaintiff's failure to obey his order "justified [Callahan] in suspecting that [Plaintiff] was involved in criminal activity." *Wardlow*, 528 U.S. at 124–125. It was therefore reasonable for Callahan to seize Plaintiff, in the form of holding him against the wall and instructing him to keep his hands up, for his own safety. *See Cadena*, 2016 WL 6330438, at *5.

The remainder of Plaintiff's seizure, lasting approximately ten minutes total, was also legally justified and conducted in a manner "reasonably related in scope to the circumstances which justified the interference in the first place"—that is, the tip about the "trap house" coupled

---

[5] Plaintiff contends "[t]he notion that [Callahan] used information provided . . . by a person living in the area to suspect possible criminal activity" was a "mere fabrication" and a genuine and material disputable fact. (docket no. 50 at 22–23). However, contrary to Plaintiff's contention, the video evidence provided by both parties clearly shows Callahan received information from a bystander pointing Callahan to Plaintiff's apartment. (docket no. 50-1). Such information, "absent specific reasons for police to doubt his or her truthfulness, an ordinary citizen, who provides information to police at a crime scene or during an ongoing investigation, may be presumed credible without subsequent corroboration. *United States v. Blount*, 123 F.3d 831, 835 (5th Cir. 1997). Based on the video evidence, there is no genuine dispute regarding the bystander tip Callahan received.

with the smell of marijuana and Plaintiff's and others' failure to follow police commands. *See Terry*, 392 U.S. at 20. Seizures based on reasonable suspicion are justified where "law enforcement interests warrant a limited intrusion on the personal security of the suspect." *Royer*, 460 U.S. at 500. In these cases, "an investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop," and "the investigative means employed should be the least intrusive means reasonably available." *Id.* An officer may, consistent with the Fourth Amendment, take reasonably necessary steps "to protect [his] personal safety and to maintain the status quo so that the limited purposes of the stop may be achieved." *Rakun v. Kendall Cty., Tex*, No. CIV.A. SA-06-CV-1044, 2007 WL 2815571, at *6 (W.D. Tex. Sept. 24, 2007).

After Plaintiff's initial seizure, he was not taken to the ground and handcuffed until he again disobeyed Callahan's order to keep his hands up and reached for the doorknob. At that point, Callahan took Plaintiff to the ground and handcuffed him. This was reasonable in light of the circumstances. *See United States v. Jordan*, 232 F.3d 447, 450 (5th Cir. 2000) ("[P]olice are within their constitutional authority to . . . handcuff [a party] for their personal safety even if probable cause to arrest is lacking.") Thereafter, Plaintiff remained handcuffed and on the ground as Callahan went to check on other officers, and was later released after no more than ten minutes. The Court finds that Callahan's seizure of Plaintiff was temporary and lasted "no longer than…necessary to effectuate the purpose of the stop." *Royer*, 460 U.S. at 500. Plaintiff's contention that he was detained for a "significant time period" does not elevate his investigative stop to an arrest requiring probable cause. (docket no. 25 at 16). "In assessing whether a detention is too long in duration to be justified as an investigative stop, we consider it appropriate to examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." *Sharpe*, 470

U.S. at 686. Here, officers released Plaintiff as soon as Callahan and other officers had questioned the other individuals from the apartment and Plaintiff calmed down. Plaintiff in fact prolonged his own detention by refusing to answer Callahan when he asked what his name was and belligerently yelling at Callahan and other officers and making aggressive movements. *See id.* at 687–88 (investigative detention for twenty minutes was reasonable where officers quickly conducted their investigation and detention was prolonged by plaintiff's own "evasive actions" that required a "graduated response to the demands of the particular situation").

The Court finds Callahan's limited seizure of Plaintiff was reasonable and not in violation of the Fourth Amendment. Callahan is therefore entitled to qualified immunity on Plaintiff's unlawful arrest/false imprisonment claim.

## CONCLUSION

Given the totality of the circumstances, the Court finds Plaintiff's seizure was reasonable and Callahan is entitled to qualified immunity as a matter of law. Accordingly, Callahan's Motion for Summary Judgment (docket no. 48) is **GRANTED**, and Plaintiff's claims against Callahan are **DISMISSED WITH PREJUDICE**. The Clerk is **DIRECTED** to enter judgment in favor of Callahan and to **CLOSE** this case.

**SIGNED** this 9th day of March, 2020.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE